UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| KANSAS CITY SOUTHERN RAILWAY COMPANY | CIVIL ACTION NO. 04-2547 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| CYNTHIA BRIDGES, ET AL. | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM RULING**

Before the Court are plaintiff's Motion for Summary Judgment [Doc. No. 24] and defendant's Motion to Dismiss, or alternatively, Motion for Summary Judgment [Doc. No. 21]. Plaintiff Kansas City Southern Railway Company ("KCSR") filed this action against Cynthia Bridges, the Secretary for the Louisiana Department of Revenue ("the State") for declaratory and injunctive relief pursuant to 49 U.S.C. § 11501, which grants federal district courts jurisdiction to enjoin state actions which "unreasonably burden and discriminate against interstate commerce."  Specifically, KCSR contends that sales and use tax assessments proposed by the State are discriminatory because motor carriers and water carriers are exempt from the tax, but rail carriers are not exempt.  The State contends that sales and use taxes are not covered by Section 11501, and that the tax is not discriminatory.  For the reasons which follow, the defendant's motion is **DENIED** and the the plaintiff's motion is **GRANTED**.

I.  **RELEVANT FACTUAL BACKGROUND**[1]

    A.  **The Parties.**

Plaintiff KCSR is a carrier by rail engaged in the transportation of property in interstate commerce ("rail carrier"). [Doc. 17-1 at 2]. It is a common carrier and is subject to the jurisdiction of the Surface Transportation Board pursuant to 49 U.S.C. § 10501. [Id. at 3]. KCSR's rail system and interstate common carrier operations span eight states, including Louisiana. [Id. at 4].

Defendant Cynthia Bridges is Secretary of the Louisiana Department of Revenue and is the officer designated by law for the collection of the Louisiana sales and use tax (La. R.S. 47:301 *et seq.*) [Id. at 6].

    B.  **The Louisiana Tax Structure**

Subject to exemptions and exclusions, Louisiana imposes a sales and use tax, consisting of a "sales tax" and a complementary "use tax," on the sale at retail, the use, the consumption, the distribution, and the storage for use or consumption in Louisiana, of each item or article of tangible personal property. [Doc. No. 17-1 at 10 (*citing* La. R.S. 47:302(A))]. The Louisiana sales tax is calculated upon the sales price of each item or article of tangible personal property when sold at retail in Louisiana regardless of where the property is used or consumed, and the Louisiana use tax is calculated upon the cost price of each item or article of tangible personal property which is not sold in Louisiana but is used, consumed, distributed, or stored for use or consumption in Louisiana. [Id. at 11 (*citing* La. R.S. 47:302(A)(1) and (2))]. The Louisiana sales tax is imposed upon the

---

[1] The parties have stipulated to the relevant facts. [Doc. No. 17-1]. Both parties have adopted that stipulation as their statement of uncontested facts. [Doc. No. 21-3; Doc. No. 24-4].

purchaser, and the Louisiana use tax is imposed upon the owner-user, of an item or article of tangible personal property acquired or used in a taxable sales and use tax transaction. [Id. at 12].

For the taxable period December 1, 1994 to December 31, 1997, the combined Louisiana sales and use tax rate was 4% of the sales price/cost price for fully taxable items. [Id. at 13, citing La. R.S. 47:302, 47:321, 47:331 and 51:1286]. Revenues from the Louisiana sales and use tax, other than revenues from sales and use tax imposed on aviation jet fuel, are deposited in the Louisiana state general revenue fund. [Id. at 14 (*citing* La. Const. art. VII, § 9)]. The imposition of the Louisiana sales and use tax is subject to numerous exemptions and exclusions, as is reflected in the Department of Revenue's "Exemption Table" publication. [Id. at 15, Exhibit A]. There are no specific exemptions or exclusions from Louisiana sales and use taxation for a rail carrier's purchase and/or use or consumption of transportation fuel, including specifically diesel fuel. The Department seeks to impose Louisiana sales and use tax on transportation fuel purchased in or imported into the State of Louisiana by KCSR and other rail carriers. [Id. at 16].

The principal competitors to rail carriers in the transportation of property in interstate commerce in Louisiana are carriers of property in interstate commerce by on-highway motor vehicles ("motor carriers") and carriers of property in interstate commerce by ships, barges and other vessels ("water carriers"). [Id. at 17]. Air carriers are also engaged in the transportation of property in interstate commerce in Louisiana but are marginal competitors to rail carriers. [Id. at 18]. Pipelines are also engaged in the transportation of property in interstate commerce in Louisiana but are not significant competitors to rail carriers due to the nature of the commodities transported by pipelines. [Id. at 19].

In Louisiana, motor carriers are exempt from the imposition of the Louisiana sales and use tax on transportation fuel, including specifically diesel fuel, if the transportation fuel is subject to the Louisiana fuel excise tax. [Id. at 20 (*citing* La. Const. art. VII, § 27)]. On-road diesel fuel, including diesel fuel used as transportation fuel by motor carriers, is subject to an excise tax of $.20 per gallon under Chapter 7 of Subtitle II of Title 47 of the Louisiana Revised Statutes ("Louisiana fuel excise tax"). [Id. at 21].

Motor carriers that are interstate users of diesel fuel and that are bonded and file reports in all states that they travel are allowed a Louisiana tax refund or credit for Louisiana fuel excise taxes paid on diesel fuel purchased in Louisiana but used elsewhere. [Id.] The amount of the refund or credit is determined by subtracting: (i) the amount of Louisiana fuel excise tax that would be payable on diesel fuel consumed in Louisiana based on the motor carrier's total vehicle mileage in this state; from (ii) the total Louisiana fuel excise tax actually paid. [Id. (*citing* La. R.S. 47:811 and 47:818.33)]. After payment of certain pledges, bonds or other evidence of indebtedness, proceeds of the Louisiana fuel excise tax are paid into various Louisiana state and parish highway funds for the construction and maintenance of highways. [Id. at 22 (*citing* La. Const. art. VII, § 27)].

Water carriers that are engaged in foreign or interstate commerce are exempt from the imposition of Louisiana sales and use tax on materials and supplies, including diesel fuel and other transportation fuel. [Id. at 23 (*citing* La. R.S. 47:305.1(B))]. Water carriers that are not engaged in foreign or interstate commerce are subject to the imposition of Louisiana sales and use tax on materials and supplies, including diesel fuel and other transportation fuel. [Id. at 23].

Transportation fuel, including diesel fuel, used or consumed by water carriers is not subject to the Louisiana fuel excise tax. [Id. at 25]. Therefore, transportation fuel,

including diesel fuel, used or consumed by water carriers in the transportation of property in interstate commerce is not subject to either Louisiana sales and use taxation or Louisiana fuel excise taxation. [Id.].

Air carriers are subject to Louisiana sales and use taxation on their purchase and/or use of aviation jet fuel used as transportation fuel. Aviation jet fuel used by air carriers as transportation fuel is not subject to the Louisiana fuel excise tax. [Id. at 25]. Louisiana sales and use taxes collected on aviation jet fuel are paid into the Louisiana Transportation Trust Fund to be used for the construction and maintenance of airports. [Id.] Air carriers are exempt from Louisiana sales and use taxation on their purchase and/or use of aviation gasoline used as transportation fuel. [Id.] Aviation gasoline used by air carriers as transportation fuel is exempt from the Louisiana fuel excise tax. [Id. (*citing* La. Attorney General Opinion No. 90-22 (6/26/90); La. R.S. 47:716.1 and 47:818.14(A)(3)].

Transportation fuel costs are a major annual operating expense of rail carriers, motor carriers, air carriers, and water carriers. [Id. at 26].

**D.     Rights-of-way.**

KCSR owns its rights-of-way in Louisiana and builds, maintains and repairs its own track and roadway structures, at its own expense. [Id. at 27]. In addition to the Louisiana sales and use tax imposed upon KCSR's purchases and importations of transportation fuel, KCSR must pay Louisiana sales and use tax on the purchase and installation of all of the materials it uses to build, maintain and repair its track and roadway structure in Louisiana. [Id. at 28].

For calendar year 1997, an audit year in the proposed Louisiana sales and use tax assessment, the Louisiana sales and use taxes paid by KCSR plus additional Louisiana sales and use tax proposed to be assessed by the Department against KCSR totaled

approximately $1,366,434. [Id. at 29]. Of this total amount, Louisiana sales and use tax attributable to transportation fuel was approximately $1,009,797 or 74% and the Louisiana sales and use tax attributable to track and roadway materials was approximately $182,475 or 13%. [Id.].

KCSR owns its own track and roadway structure, as well as the roadbed on which it is built, and is fully subject to ad valorem taxes on that property in the State of Louisiana. [Id. at 30]. Motor carriers, water carriers and air carriers do not acquire, construct, maintain and own public roads and highways, waterways and ports and air space and airports upon or through which they operate, respectively, and such carriers, accordingly, do not pay Louisiana sales and use tax or ad valorem taxes on or related to the public rights-of-way they use for transportation purposes. [Id. at 31].

### E. The Proposed Assessment.

The Department of Revenue conducted a sales and use tax audit of KCSR (the "Audit") for the taxable period December 1, 1994 to December 31, 1997 (the "Audit Period"). [Id. at 32]. The Department issued a Statement of Louisiana General Sales Tax Deficiency (the "Audit Report") prepared by the Auditor, which scheduled purchases and importations of tangible personal property by KCSR during the Audit Period upon which the Auditor asserted that Louisiana sales and use tax was due. [Id. at 33, Exhibit B].

Schedule D of the Audit Report lists purchases and importations of diesel fuel by KCSR allegedly giving rise to Louisiana sales and use tax due from KCSR for the Audit Period. [Id. at 34]. Of the total $2,170,751.30 additional Louisiana sales and use tax allegedly due, as set forth in the Audit Report, $1,663,798.92 is attributable to the purchase and importation of diesel fuel by KCSR. [Id. at 35].

For the period from December 1994 through July 1996, Schedule D1 of the Audit Report includes in "Total Taxable" fuel (1) all diesel fuel KCSR purchased from Louisiana vendors, and (2) a portion (based on the ratio of KCSR's Louisiana track miles to total track miles) of diesel fuel KCSR purchased from non-Louisiana vendors and imported into Louisiana. [Id. at 36]. For the period from August 1996 through December 1997, Schedule D2 of the Audit Report includes KCSR's total diesel fuel purchases from Louisiana and non-Louisiana vendors multiplied by a percentage, which the Auditor believes approximates the calculation of "Total Taxable" fuel under the methodology used in Schedule D1. [Id.] KCSR disagreed then and disagrees now with the methodology used by the Auditor to calculate "Total Taxable" fuel in Schedule D1 and Schedule D2. [Id.].

Diesel fuel purchased in Louisiana and imported into Louisiana by KCSR is used as transportation fuel to power KCSR's locomotives in their common carrier operations transporting property in interstate commerce. [Id. at 37]. Based on the Audit Report, the Department issued a Notice of Proposed Tax Due (the "Proposed Assessment") to KCSR, dated June 16, 2000 and signed by Revenue Audit Reviewer Robert Gunn. [Id. at 38, Exhibit C].

KCSR, through Louisiana counsel, filed a protest letter dated September 28, 2000 (the "Protest Letter") in response to the Proposed Assessment. [Id. at 39, Exhibit D]. KCSR, through Louisiana counsel, delivered to the Revenue Audit Reviewer a memorandum dated July 24, 2002 (the "Memorandum") positing that the Proposed Assessment amounted to discrimination against a railroad in violation of the 4-R Act. [Id. at 40, Exhibit E].

In anticipation that a state suit would be filed by the State of Louisiana to enforce the proposed assessment, KCSR filed this suit in federal court asking the court to

determine whether the Louisiana tax structure violates Section 1150 (b) (4) of the 4-R Act by discriminating against a rail carrier providing transportation subject to the jurisdiction of the Surface Transportation Board. [Id. at 41].

## II. LAW AND ANALYSIS

### A. Summary Judgment Standard.

Summary judgment will be granted when "... the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P.56(c); See Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548 (1986); Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994). The party moving for summary judgment must demonstrate the absence of a genuine issue of material fact. Liquid Air Corp., 37 F.3d at 1075. A dispute over a material fact is genuine, if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Kee v. City of Rowlett Texas, 247 F.3d 206, 210 (5th Cir. 2001). If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response. Liquid Air Corp., 37 F.3d at 1075.

If the movant does, however, meet this burden, the burden shifts and the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial. Celotex, 477 U.S. 317, 106 S.Ct. 2548. To that end, the Court must view the facts and the inferences to be drawn therefrom in the light most favorable to the nonmoving party. Ameristar Jet Charter v. Signal Composites, 271 F.3d 624, 626 (5th Cir. 2001). However, the Court will not assume that the nonmoving party could or would prove the necessary facts. Liquid Air Corp., 37 F.3d at 1075. The nonmoving party's burden will not be satisfied by "some metaphysical doubt as to the material facts," by

"conclusory allegations," by "unsubstantiated assertions," or by only a "scintilla" of evidence. Id. Therefore, summary judgment is appropriate in any case "where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." Armstrong v. City of Dallas, 997 F.2d 62 (5th Cir. 1993); see generally Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S.Ct. 1348, 1356 (1986).

With these principles in mind, we now turn to a review of the claims at issue in the instant case.

**B.    Jurisdiction.**

As a preliminary matter, the defendant argues that the Court does not have jurisdiction to grant the relief sought pursuant to 49 U.S.C. § 11501 (the "4-R Act"). Section 11503(b) of the Act prohibits states from assessing railroad property at a higher rate than other commercial property, levying or collecting at such a rate, levying or collecting ad valorem taxes at a discriminatory rate, or imposing "another tax that discriminates against rail carriers." The defendant contends that the prohibition against imposing "another tax" which discriminates against rail carriers does not apply to sales and use tax. However, the very arguments advanced by the defendant were thoroughly analyzed and ultimately rejected by the Fifth Circuit in Kansas City Southern Ry. Co. v. McNamara, 817 F.2d 368 (5th Cir. 1987), where the court stated:

> The meaning of this statute is clear enough. Congress was most concerned with property tax discrimination, and it voiced that concern in detail in § 11503(b)(1)-(3); but it included § 11503(b)(4) to ensure that states did not shift to new forms of tax discrimination outside the letter of the first three subsections of § 11503(b). Nor is the rule of *ejusdem generis* of help. That "rule" is an interpretive rule-of-thumb, not a "rule" in the sense of a principle with independent analytical force. It merely summarizes a common-sense judicial response to

Page 9 of 15

> centuries of lawyers' implausible interpretations of serial clauses. Besides, it is too late in the jurisprudential day for us to agree with the Secretary and Judge Warriner. The shadows have lengthened across their arguments, as one-by-one every Court of Appeals that has considered the issue has sided with the railroads' position. Although these decisions do not bind us, we do not lightly disregard such unanimity; and we would do so only were we convinced that those decisions are wrong. Obviously, we are not at all convinced they are wrong. We hold that § 11503(b)(4) forbids all forms of tax discrimination against railroads by states.

Id. at 373-374. Accordingly, the Court finds that the 4-R Act's prohibition against taxes which discriminate against rail carriers applies to sales and use taxes under the applicable Fifth Circuit jurisprudence. See also Burlington Northern, Santa Fe Ry. Co. v. Lohman, 193 F.3d 984 (8th Cir. 1999)(4-R Act applies to sales and use taxes). Having found it has jurisdiction, the Court will now turn its attention to the merits of the plaintiff's claims.

**C.     Discrimination Against Rail Carriers.**

Plaintiff contends that the sales and use tax that the State is attempting to collect discriminates against rail carriers in violation of the 4-R Act. Before the Court can assess the merits of the plaintiff's claim, it must first determine the taxes to include in its analysis and the appropriate class for comparison.

*1.     The Specific Taxes Under Consideration.*

The Court must initially determine which taxes are appropriate to consider when determining whether the sales and use tax discriminates against rail carriers. KCSR contends that the Court should not look beyond the sales and use tax itself, which it contends is facially discriminatory against rail carriers. The State contends that the Court should consider the impact of alternative taxes, such as the excise tax, when assessing the discriminatory impact of sales and use taxes on rail carriers.

However, the Fifth Circuit has once again already rejected the State's argument. In <u>Kansas City Southern Railway v. McNamara</u>, 817 F.2d 368 (5th Cir. 1987), the plaintiff challenged the Louisiana Tax on Transportation and Communication Utilities ("T & C tax"), which the Fifth Circuit found to be akin to a "business license" tax on rail carriers. The State argued that this tax was "complementary" to the general sales and use tax which the railroads purportedly underpaid or escaped. The Fifth Circuit rejected the State's position, finding that the argument did "not merit discussion." <u>Id.</u> at 377.

After the district court found that the T & C tax impermissibly discriminated against rail carriers, it enjoined the tax, but only to the extent it exceeded an equivalent and locally-assessed occupational license tax. On appeal, the Fifth Circuit agreed that the district court's issuance of a partial injunction "seemed fair" on the clear facts of that case. However, the Fifth Circuit found it was "compelled" to reverse the partial injunction:

> Once we start down the slippery slope of enjoining discriminatory taxes only to the extent that they exceed "equivalent" taxes by other taxing entities, we destroy the bright lines created by § 11503(b) itself. Furthermore, if we affirm the district court's partial injunction, we will consign every 4-R case to a trial on the merits like the one in this case-an unproductive "battle of the experts" on whether any taxes levied in the state are "equivalent," and if so, which ones. . . .
>
> We recognize that our conclusion is somewhat formalistic. But the 4-R Act is formalistic. And, again, we have faith in the abilities of the state tax collectors to reach the pockets of the railroads with taxes that are actually and formally fair.

<u>Kansas City Southern Ry. Co. v. McNamara,</u> 817 F.2d 368, 379 (5th Cir. 1987).

Although not in the context of a partial injunction, the State is asking this Court to do the very thing the Fifth Circuit has refused to do: attempt to ascertain the "equivalency" of the excise tax to the sales and use tax. As the has Fifth Circuit stated:

> Determining the intrinsic economic fairness of a tax system to a particular taxpayer is a paradigm of the kind of polycentric problem for which courts are ill-suited. In effect, we would have to determine the fairness of the tax system to each and every taxpayer in order to decide whether it was fair to any one of them. See Fuller, The Forms and Limits of Adjudication, 92 Harv.L.Rev. 353, 394-404 (1978). In the words of the Surpeme Court,
>> "[C]ourts as institutions are poorly equipped to evaluate with precision the relative burdens of various methods of taxation. The complexities of factual economic proof always present a certain potential for error, and courts have little familiarity with the process of evaluating the relative economic burden of taxes."
>
> Minneapolis Star v. Minnesota Commissioner of Revenue, 460 U.S. 575, 589-90, 103 S.Ct. 1365, 1374, 75 L.Ed.2d 295 (1983) (footnote omitted).

Kansas City Southern Ry. Co. v. McNamara, 817 F.2d 368, 377 (5th Cir. 1987).

This Court is not equipped to evaluate and compare the sales and use tax with the excise tax, with its potential refunds and credits, or with any other allegedly "equivalent" or "complementary" tax. Simply put, the 4-R Act does not require the courts to assess an individually discriminatory tax against the fairness of a state's entire tax structure. Id. at 377. As the Fifth Circuit noted: "If state authorities approach the problem carefully, we trust that they can create tax structures that comply with the 4-R Act while ensuring that the railroads pay their fair share of state taxes. We will not do that job for them." Id. at 378. See also Burlington North, Santa Fe Railway Co. v. Lohman, 193 F.3d 984, 986 (8th. Cir. 1999)(finding sales and use tax discriminatory even though exempt competitors paid excise tax).[2]

---

[2]The State argues that Lohman is distinguished from the instant case since in Louisiana, diesel fuel is only exempt from the sales and use tax *to the extent* that it is subject to the excise tax. However, all on-road diesel fuel is subject to the excise tax, and therefore exempt from the sales tax. The State cannot simply incorporate the entire excise tax structure into the sales and use tax structure by reference.

The Court finds that it is only the sales and use tax which is relevant in assessing whether that tax discriminates against rail carriers.

### 2. The Proper Comparison Group.

In order to determine the merit of the plaintiff's claim, the Court must first designate the appropriate class for comparison. The Court agrees with the parties that the competitive mode class, comprised of the railroads' direct competitors, is the appropriate comparison class for analyzing the sales and use tax. See also Burlington North, Santa Fe Railway Co. v. Lohman, 193 F.3d 984, 986 (8th. Cir. 1999). Here, the parties agree that motor carriers and water carriers should be included within the comparison class. [Doc. No. 17-1 at 17]. However, they disagree as to whether air carriers, a marginal competitor with rail carriers, should be included. While the Court is disinclined to include a marginal competitor into the comparison class, the Court need not decide that issue since, as will be shown below, the Court finds that air carriers are treated more favorably than rail carriers.

### 3. The Application of the Tax to the Comparison Class.

Having decided the appropriate tax under consideration and the appropriate comparison class, the Court must now assess whether the sales and use tax for diesel fuel assessed against the rail carrier is discriminatory.

#### a) Motor carriers

The diesel fuel used by motor carriers is subject to an excise tax and is therefore exempt from the imposition of the Louisiana sales and use tax. [Doc. No. 17-1 at 20-21]. Since the excise tax is not under consideration in the instant evaluation, the Court finds that motor carriers are treated more favorably than rail carriers under the Louisiana sales and use tax structure.

### b) *Water carriers*

The parties have stipulated that water carriers are another principal competitor to rail carriers. [Doc. No. 17-1 at 17]. The parties defined "water carriers" as carriers of property in interstate commerce by ships, barges and other vessels. [Id.]. Water carriers that are engaged in foreign or interstate commerce are exempt from the sales and use tax on diesel fuel and other transportation fuel. [Doc. No. 17-1 at 23 (*citing* La. R.S. 47:305.1(B))].[3] Accordingly, the Court finds that water carriers are treated more favorably than rail carriers under the Louisiana sales and use tax structure.

### c) *Air carriers*

The Court does not believe that air carriers, as admittedly marginal competitors to rail carriers, should be included within the comparison class. However, the Court will analyze the taxation of air carriers relative to rail carriers. While air carriers are exempt from the Louisiana sales and use tax on their purchase and/or use of aviation *gasoline,* they are subject to the sales and use tax on their purchase and/or use of aviation *jet fuel* used as transportation fuel. [Doc. No. 17-1 at 25]. However, the sales and use taxes collected on jet fuel are paid into the Louisiana Transportation Trust Fund to be used for the construction and maintenance of airports. [Id.] The Court finds that such a dedication would give air carriers a distinct competitive advantage over rail carriers, to the limited extent that they may compete with each other. See Burlington Northern R. Co. v. Triplett, 682 F.Supp. 443 (D. Minn. 1988). Accordingly, the Court finds that the Louisiana sales and use tax treats air carriers more favorably than rail carriers.

---

[3]The fact that water carriers which *are not* engaged in foreign or interstate commerce *are* subject to the sales and use tax is irrelevant, since there is no evidence before the court that such carriers are principal competitors to rail carriers such as KCSR.

### III. CONCLUSION

Based on the foregoing, the Court finds that the sales and use tax assessments proposed by the State against KCSR are discriminatory and therefore prohibited by 49 U.S.C. § 11501(b).

Therefore:

**IT IS ORDERED** that the defendant's Motion to Dismiss, or alternatively, Motion for Summary Judgment [Doc. No. 21] is hereby **DENIED.**

**IT IS FURTHER ORDERED** that the plaintiff's Motion for Summary Judgment [Doc. No. 24] is hereby **GRANTED.**

**IT IS FURTHER ORDERED** that the parties prepare and file a joint proposed judgment within 30 days.

**THUS DONE AND SIGNED** this 30th day of March, 2007.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE